**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VANGUARD ENERGY PARTNERS LLC, | |
| Plaintiff, | Civil Action No. 18-13124 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| THE HANOVER INSURANCE COMPANY, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant The Hanover Insurance Company's ("Hanover" or "Defendant") Motion to Dismiss the First Amended Complaint of Plaintiff Vanguard Energy Partners, LLC ("Vanguard" or "Plaintiff"). (ECF No. 49.) Plaintiff opposed Defendant's Motion (ECF No. 57), and Defendant replied (ECF No. 59). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is denied.

I.    **BACKGROUND**[1]

    A.    **Factual Background**

        1.    **The Berkley Project**

On or about September 16, 2016, Vanguard entered into a procurement and construction agreement (the "Berkley Contract") with Southern Sky Renewable Energy County Street, LLC ("Southern Sky"). (Am. Compl. ¶ 5, ECF No. 39.) Under the terms of the Berkley Contract, Southern Sky agreed to pay Vanguard "to perform certain work in connection with the procurement and construction of a solar electric generating system" (the "Berkley Project") in Berkley, Massachusetts. (*Id.*) Vanguard subsequently entered into an agreement with Patriot Solar Group, LLC ("Patriot") (the "Berkley Purchase Order") under which "Patriot agreed to manufacture, construct[,] and deliver a specified ballasted ground mounted racking system and related equipment to the Berkley Project site" in exchange for $850,010. (*Id.* ¶ 6.) On or about September 24, 2016, Vanguard and Patriot also entered into a subcontracting agreement (the "Berkley Subcontract") (with the Berkley Purchase Order, the "Berkley Agreements"). (*Id.* ¶ 7; *see also* Subcontracting Agreements[2] *1–*25, Ex. A to Pl.'s Reply Br., ECF No. 57-2.)[3]

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] The Court notes that Vanguard attaches both the Berkley Subcontract and the Carver Subcontract (as discussed in section I.A.2, *infra*) as a single exhibit. The Court, for clarity, refers to this exhibit collectively as the "Subcontracting Agreements." When referencing this exhibit, the Court refers to the page number that is listed on the ECF header and denotes such reference with an asterisk.

[3] While a court generally does not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Under the Berkley Subcontract, Vanguard agreed to pay Patriot $355,440 to complete various work related to the Berkley Project. (Am. Compl. ¶ 7.) Specifically, the Berkley Subcontract required Patriot to,

> (i) deliver the specified ballasted ground mounted racking system and related equipment to the Berkley Project site; (ii) secure permits and schedule all required inspections with local authorities; (iii) unload ballast blocks for racking tables; (iv) use additional stone to shim up ballast blocks for racking table; and (v) unload and install racking tables.

(*Id.* ¶ 8.) The Berkley Subcontract required Patriot to complete the aforementioned work by no later than November 2, 2016. (*Id.* ¶ 9.) Section 1.6.5 of the Berkley Subcontract provides, in relevant part, that "[a]ny time specified for the completion of the [work] or any milestone thereof is a material provision of [the Berkley Subcontract], and TIME IS HEREBY MADE OF THE ESSENCE with respect thereto." (*Id.*)

On or about November 11, 2016, "Hanover, as surety, issued a performance bond bearing bond number 1048015 [(the "Berkley Bond")] on behalf of Patriot, as principal, in the penal sum of $355,440, for the benefit of Vanguard, as obligee, in connection with the Berkley Subcontract and [the] Berkley Project." (*Id.* ¶ 12; *see also* Bond Documents[4] *1–*3, Ex. 2 to Mot., ECF No. 49-4.) Under the terms of the Berkley Bond,

> Whenever [Patriot] shall be, and be declared by [Vanguard] to be in default under the [Berkley Subcontract], [Vanguard] having performed [Vanguard's] obligations thereunder:
>
> (1) [Hanover] may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

---

[4] The Court notes that Vanguard attaches both the Berkley Bond and the Carver Bond (as discussed in section I.A.2, *infra*) as a single exhibit. The Court, for clarity, refers to this exhibit collectively as the "Bond Documents." When referencing this exhibit, the Court refers to the page number that is listed on the ECF header and denotes such reference with an asterisk.

3

> (2) [Vanguard] after reasonable notice to [Hanover] may, or [Hanover] upon demand of [Vanguard] may arrange for performance of [Patriot's] obligation under the [Berkley Subcontract] subject to the provisions of paragraph 3 herein;
>
> (3) The balance of the [Berkley Subcontract], as defined below, shall be credited against the reasonable cost of completing performance of the [Berkley Subcontract]. If completed by [Vanguard], and the reasonable cost exceeds the balance of the subcontract price, [Hanover] shall pay to [Vanguard] such excess, but in no event shall the aggregate liability of [Hanover] exceed the amount of this bond. If [Hanover] arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the [Berkley Subcontract] or remedy the default and to reimburse [Hanover] for its outlays shall be paid to [Hanover] at the times and in the manner as said sums would have been payable to [Patriot] had there been no default under the [Berkley Subcontract]. . . .

(Am. Compl. ¶ 13; *see also* Bond Documents *1, *4.) At all relevant times, Vanguard fully complied with its obligations under the Berkley Agreements. (Am. Compl. ¶ 14.)

Subsequent to executing the Berkley Agreements, Patriot "notified Vanguard that it was incapable of securing the requisite permits" for the Berkley Project, in breach of the Berkley Subcontract. (*Id.* ¶ 15.) Patriot requested that Vanguard or another of its subcontractors secure the necessary permits, which subsequently occurred. (*Id.* ¶¶ 15–16, 25–26.) Patriot also "notified Vanguard that "it was unable to deliver the ballasted ground mounted racking system and related equipment to the Berkley Project site" and similarly requested that Vanguard or its other subcontractors deliver the equipment, which subsequently occurred. (*Id.* ¶¶ 17–18, 25–26.) Patriot further notified Vanguard that "it did not have the manpower or ability to maintain the schedule for the Berkley Project" or complete the contracted work "in accordance with the contractual milestones and schedule." (*Id.* ¶ 19.) Due to Patriot's failures, the Berkley Project fell behind schedule. (*Id.* ¶ 20.)

4

Vanguard "made numerous demands to Patriot to cure its breaches" but "Patriot refused and was incapable of curing its breaches or otherwise progressing and completing" its work on the Berkley Project. (*Id.* ¶¶ 22–23.) Vanguard was "required to pay premium time and other additional labor costs to other trade subcontractors to mitigate against and avoid substantial liquidated damages" as a result of Patriot's failures. (*Id.* ¶ 27.) Vanguard and its subcontractors "also cured Patriot's defective work on the Berkeley Project." (*Id.* ¶ 26.)

### 2. The Carver Project[5]

On or about September 16, 2016, Vanguard and Southern Sky entered into a second procurement and construction agreement (the "Carver Contract"). (*Id.* ¶ 37.) Under the terms of the Carver Contract, Southern Sky agreed to pay Vanguard "to perform certain work in connection with the procurement and construction of a solar electric generating system" (the "Carver Project") (collectively with the Berkley Project, the "Projects") in Carver, Massachusetts. (*Id.*) Vanguard subsequently entered into an agreement with Patriot (the "Carver Purchase Order") under which Vanguard agreed to pay a sum of $355,540 in exchange for Patriot manufacturing and delivering a "specified ballasted ground mounted racking system and related equipment" to the Carver Project site. (*Id.* ¶ 38.) Vanguard and Patriot also entered into a subcontracting agreement (the "Carver Subcontract") (collectively with the Carver Purchase Order, the "Carver Agreements"). (*Id.* ¶ 39; *see also* Subcontracting Agreements *26–*50.) Under the Carver Subcontract, Vanguard agreed to pay Patriot $187,425 to complete various work related to the Carver Project. (*Id.*) Much like the Berkley Subcontract, the Carver Subcontract required Patriot to complete all work on the Carver

---

[5] The Court notes that the factual allegations relating to the Carver Project are highly similar, and at times verbatim, to those relating to the Berkley Project. The Court, therefore, provides a more summary recitation of these factual allegations.

5

Project by November 2, 2016 and contained a clause that stated "TIME IS HEREBY MADE OF THE ESSENCE." (*Id.* ¶ 41.)

"On or about November 11, 2016, Hanover, as surety, issued a performance bond bearing bond number 1048014 [(the "Carver Bond") (collectively with the Berkley Bond, the "Bonds")] on behalf of Patriot, as principal, in the penal sum of $187,425, for the benefit of Vanguard, as obligee, in connection with the Carver Subcontract and [the] Carver Project." (*Id.* ¶ 44; *see also* Bond Documents *4–*6.) The duties of the various parties under the Carver Bond were virtually identical to those under the Berkley Bond. (*Compare* ¶ 13 *with* ¶ 45; *compare* Bond Documents *1–*3 *with* Bond Documents *4–*6.) At all relevant times, Vanguard fully complied with its obligations under the Carver Agreements. (Am. Compl. ¶ 46.)

As with the Berkley Project, Patriot subsequently notified Vanguard that it would be unable to secure the requisite permits for the Carver Project, and would be unable to deliver the contracted equipment to the project site. (*Id.* ¶¶ 47, 49.) Patriot requested "that Vanguard or its other subcontractors" complete these tasks, which subsequently occurred. (*Id.* ¶¶ 47–50.) Patriot also notified Vanguard that it would be unable to maintain the schedule for the Carver Project which, like the Berkley Project, fell behind schedule due to Patriot's failures. (*Id.* ¶¶ 51–52.) Patriot was unable to cure its breaches which resulted in Vanguard paying "premium time and other additional labor costs to its other trade subcontractors to mitigate against and avoid substantial liquidated damages" to remedy Patriot's failures. (*Id.* ¶¶ 55, 59.) Vanguard and its subcontractors "also cured Patriot's defective work on the Carver Project." (*Id.* ¶ 58.)

### 3. The Claim Letter

On April 18, 2017, Vanguard sent Hanover correspondence (the "Claim Letter") notifying Hanover that Vanguard "had declared Patriot in default of its bonded obligations on the [Projects]

and that it was pursuing, and thereby submitting" claims against the Bonds (the "Bond Claims"). (*Id.* ¶¶ 28, 60.) On May 2, 2017, Hanover sent Vanguard correspondence acknowledging its receipt of the Bond Claims. (*Id.* ¶¶ 29, 61.) Hanover also "requested additional documentation and information from Vanguard in connection with the [Bond Claims.]" (*Id.*) On July 10, 2017, Vanguard sent Hanover correspondence containing the documentation Hanover had requested. (*Id.* ¶¶ 30, 62.) After not receiving a response from Hanover, Vanguard sent further correspondence on August 21, 2017 requesting Hanover "issue a response to the [Bond Claims]." (*Id.* ¶¶ 31, 63.) On August 30, 2017, Hanover "advised Vanguard that it was continuing its investigation of the Berkley Bond Claim." (*Id.* ¶ 32.) "To date, Vanguard has not received a formal response from Hanover with respect to the [Bond Claims]." (*Id.* ¶¶ 33, 64.)

### 4. The Patriot Bankruptcy

On March 6, 2017, Patriot filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Michigan (the "Patriot Bankruptcy"). (*Id.* ¶ 68.) "On March 1, 2018, Vanguard filed an Amended Proof of Claim in the Patriot Bankruptcy, seeking to recover its damages incurred under the Carver Subcontract and the Berkley Subcontract." (*Id.* ¶ 69.) "On April 25, 2018, Patriot filed a Motion to Approve Stipulation for Plan Treatment Between Patriot and Vanguard" (the "Patriot Bankruptcy Motion"). (*Id.* ¶ 70.) Under the Patriot Bankruptcy Motion, Vanguard was to be allowed an unsecured claim of $3,200,000 and Patriot agreed to release all claims and defenses it may have had against Vanguard. (*Id.* ¶ 70.) On May 29, 2018, Hanover filed a limited objection to the Patriot Bankruptcy Motion. (*Id.* ¶ 71.) Vanguard alleges that Hanover filed its objection "without having adequately investigated the Bond Claims." (*Id.*)

### 5. Hanover's Handling of the Bond Claims

Vanguard further alleges that Hanover's entire review of the Bond Claims was conducted in bad faith. (*Id.* ¶ 72.) Specifically, Vanguard alleges that Hanover: (1) ignored correspondence from Vanguard that established the merits of the Bond Claims; (2) did not respond to the Bond Claims in a timely manner; (3) overlooked project records that established the merit of the Bond Claims; and (4) has "delayed the resolution of the Bond Claims." (*Id.* ¶ 73.) Vanguard contends that Hanover failed to conduct an independent investigation regarding the merits of the Bond Claims and instead "relied exclusively on the uncorroborated opinions of its indemnitors." (*Id.* ¶¶ 74–75.) "Hanover also refused to discuss means of resolving and adjusting the Bond Claims." (*Id.* ¶ 77.) As a result of Hanover's failures, Vanguard has "incur[red] needless additional fees and costs in the Patriot Bankruptcy." (*Id.* ¶ 78.)

### B. Procedural Background

On November 15, 2019, Vanguard filed an Amended Complaint against Hanover alleging five counts: Count One, alleging that Hanover had failed to perform its obligations under the Berkley Bond (*id.* ¶¶ 80–85); and Count Two, alleging that Hanover had failed to perform its obligations under the Carver Bond (*id.* ¶¶ 86–91); Count Three for common law bad faith conduct (*id.* ¶¶ 92–97); Count Four, for deceptive acts or practices, in violation of Mass. Gen. Laws Ann. ch. 93A, §§ 2, 11 (*id.* ¶¶ 98–101); and Count Five for breach of the implied covenant of good faith and fair dealing (*id.* ¶¶ 102–06).

On December 12, 2019, Hanover filed the instant motion to dismiss. (Mot., ECF No. 49.) After a series of adjournments, Vanguard opposed Hanover's Motion on February 11, 2020 (Pl.'s Opp'n Br., ECF No. 57), and Hanover replied (Def.'s Reply Br., ECF No. 59).

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. THE PARTIES' POSITIONS

Hanover avers that the Bonds contain two conditions precedent that first must be satisfied to trigger its liability as surety: (1) Vanguard was required to provide Hanover notice that it had declared Patriot in default; and (2) after providing notice of Patriot's default, Vanguard was required to "provide Hanover with 'reasonable notice' prior to Vanguard arranging for

performance of Patriot's work." (Def.'s Moving Br. 9–10, ECF No. 49-1.) Hanover argues that Vanguard materially breached the terms of the Bonds because Vanguard and its other subcontractors performed curative work prior to declaring Patriot in default and prior to providing timely notice to Hanover. (*Id.* at 16.) Hanover contends that because of Vanguard's material breach, Hanover's surety obligations under the Bonds are vitiated. (*Id.* at 10.)

Vanguard advances several arguments in opposition. First, it contends that, as alleged in the Amended Complaint, "[a]t all relevant times, Vanguard complied with its obligations under the [Bonds]." (Pl.'s Opp'n Br. 16 (citing Am. Compl. ¶¶ 81, 87).) To that end, Vanguard avers that Hanover's Motion is premature because "the determination of whether Vanguard satisfied the requirements of the Bonds is fact-sensitive and requires discovery." (*Id.* at 17.) Second, Vanguard avers that the Berkley and Carver Subcontracts were incorporated by reference into the Bonds. (*Id.* at 18.) The Subcontracts, according to Vanguard, permit it to supplement Patriot's performance without first declaring them to be in default and to subsequently seek reimbursement for the resulting costs from Patriot and from Hanover, as surety. (*Id.*) Vanguard points to two sections from the Berkley and Carver Subcontracts in support of this argument; sections 1.6.12 and 8.1.4. (*Id.*) Section 1.6.12 provides, in relevant part:

> If Subcontractor should so delay or threaten to delay the progress or performance of its obligations under this Agreement, or cause any actual or potential damage or liability to Contractor, then Subcontractor may be deemed in breach of this Agreement, and shall indemnify and hold Contractor harmless as to all resulting damage, liability costs and the like.

(*Id.* at 21 (citing Am. Compl. ¶¶ 11, 43); *see also* Subcontracting Agreements *7, *32.)

Section 8.1.4 provides, in relevant part:

> In case of a breach, Subcontractor and its surety company shall be liable to Contractor for any and all additional costs, expenses, attorney's fees, and other damages, both liquidated and

10

> unliquidated, which directly or indirectly result from Subcontractor's breach or threatened breach.

(Pl.'s Opp'n Br. 21; *see also* Subcontracting Agreements \*19, \*44.) Third, Vanguard avers that, "even if Hanover can escape the bargained-for language of the [Berkley and Carver Subcontracts], there are factual issues [in this case] that cannot be resolved through a motion to dismiss." (Pl.'s Opp'n Br. at 26.)

On reply, Hanover argues that its Motion should be granted because discovery will not change the fact that Vanguard performed curative work prior to declaring Patriot in default, and prior to providing notice to Hanover. (Def.'s Reply Br. 7.)

## IV. DISCUSSION

### A. Massachusetts State Law Applies to the Surety Issues

The Court has diversity jurisdiction over this dispute under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (Am. Compl. ¶¶ 1–3; *see also* Def.'s Moving Br. 3.) "A court exercising diversity jurisdiction must apply the choice of law rules of the forum state to determine which state's substantive laws apply." *Hartford Cas. Ins. Co. v. Cal-Tran Assocs., Inc.*, No. 05-5575, 2006 WL 3733031, at \*1 (D.N.J. Dec. 18, 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941)). "Choice of law questions under New Jersey law require a court to apply the two-step 'governmental-interests analysis.'" *Edelman v. Croonquist*, No. 09-1938, 2010 WL 1816180, at \*3 (D.N.J. May 4, 2010) (citing *Rowe v. Hoffman–La Roche, Inc.,* 917 A.2d 767, 771 (N.J. 2007)). Under the governmental-interests analysis, the "forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its laws applied." *Hartford Cas. Ins. Co.*, 2006 WL 3733031, at \*1 (citing *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 348 (D.N.J. 1997)). "The Court must

ultimately apply the law of the state with the greatest interest in governing the particular issue." *Edelman*, 2010 WL 1816180, at *3.

Here, the Court finds that the state of Massachusetts has the greatest interest in the present dispute. The Projects both took place in Massachusetts and Hanover similarly maintains its principal place of business within the state. (*See generally* Am. Compl.; Def.'s Moving Br. 3.) Moreover, the parties agree that Massachusetts law should apply. (Def.'s Moving Br. 10 n.4; Pl.'s Opp'n Br. 31 n.5.) The Court, accordingly, applies Massachusetts law when analyzing the surety issues in this case.

### B. The Berkley and Carver Subcontracts Were Incorporated By Reference Into the Bonds

When the language of a bond incorporates an underlying contract, that contract becomes a part of the bond itself. *Travelers Cas. & Sur. Co. of Am. v. Long Bay Mgmt. Co.*, 792 N.E.2d 1013, 1016 (Mass. App. Ct. 2003); *see also John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, 266 F. Supp. 2d 208, 236 n.42 (D. Mass. 2003) (noting that when a "bond incorporates the underlying contract, the two contracts are construed together as a whole to ascertain the intent of the parties.") (internal quotation omitted).

Here, the plain language of the Bonds clearly incorporates the Berkley and Carver Subcontracts. The Bonds state, in relevant part, "WHEREAS, Principal has by written agreement dated 9/24/2016 entered into a subcontract with Obligee for installation of a photovoltaic solar electric system . . . *which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.*" (Bonds *1, *4) (emphasis added). The Court, therefore, reads the Subcontracts and the Bonds as integrated documents.

### C. At This Stage of the Litigation, Hanover Has Failed to Meet Its Burden to Establish the Bond Claims Should be Dismissed

To plead a claim for breach of contract under Massachusetts law, a plaintiff must allege: "[1] there was an agreement between the parties; [2] the agreement was supported by consideration; [3] the plaintiff was ready, willing, and able to perform [its] part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016). Here, the Court finds Vanguard has sufficiently alleged the existence of an agreement between the parties that was supported by consideration. (*See* Am. Compl. ¶¶ 12, 44.) Vanguard has similarly alleged that it suffered harm resulting from Hanover's alleged breach of the terms of the Bonds. (*Id.* ¶¶ 34–36, 65–67.) Construing the Amended Complaint in the light most favorable to Vanguard, the Court finds it has sufficiently alleged that it was ready, willing, and able to perform its obligations under the Bonds. Vanguard specifically avers that, "[a]t all relevant times, [it] complied with its obligations under the [Bonds]." (Am. Compl. ¶¶ 81, 87.) The relevant inquiry, therefore, is whether Vanguard has sufficiently alleged that Hanover breached the terms of the contract.

Vanguard avers that, "[a]s required by the [Bonds], . . . [it] notified Hanover that it had declared Patriot in default of its bonded obligations on the [Projects] and that it was pursuing, and thereby submitting the [Bond Claims]." (*Id.* ¶¶ 82, 88.) "Hanover failed and refused to act with reasonable promptness to perform its obligations under the [Bonds] by . . . failing to promptly remedy Patriot's default and/or by failing to arrange for performance of Patriot's obligations under the [Subcontracts]." (*Id.* ¶¶ 84, 90.)

In response to Vanguard's allegations, Hanover contends that Vanguard materially breached the terms of the Bonds by failing to comply with two conditions precedent contained within the Bonds. (Def.'s Moving Br. 9.) Vanguard failed to notify Hanover that it had declared

Patriot in default, and failed to provide "reasonable notice" before "arranging for performance of Patriot's work under the Subcontracts." (*Id.* 9–10.) Vanguard's failure, according to Hanover, discharges Hanover of any liability under the bonds. (*Id.* at 10.) In support of its argument, Hanover principally relies on *Green Acres Landscape & Constr. Co. v. Town of Belmont*, No. PLCV2009-01157 2011, Mass. Super. LEXIS 345 (Sept. 26, 2011). In *Green Acres*, the Massachusetts Superior Court interpreted identical bond language and held that "[t]he failure to give the notice expressly required by a bond is a material breach which prejudices the surety and discharges it from liability on the bond." *Green Acres*, 2011 Mass. Super. LEXIS 345, at *34. The Court noted that "[t]he purpose of such a requirement is to give the surety an opportunity to protect its interests and minimize its damages pursuant to the performance options granted under the bond." *Id.* at *33. Hanover argues that this Court should find similarly and dismiss Vanguard's claims with prejudice. (Def.'s Opp'n Br. 16.) In response to Hanover's reliance on *Green Acres*, Vanguard points to *Walter Concrete Construction Corporation v. Lederle Laboratories*, 788 N.E.2d 609, 610 (N.Y. 2003), wherein the Court of Appeals for the state of New York found that a performance bond containing identical language "contain[ed] no explicit provision requiring a notice of default as a condition precedent to any legal action on the bond." (Pl.'s Opp'n Br. 29.) Indeed, the court found that an action on such a bond "is not tied to a declaration of default, the principal's cessation of work or the surety's refusal to perform under the bond. Rather, an action on [this type of bond] need only be commenced within two years from the date on which final payment under the contract is due." *Walter Concrete*, 788 N.E.2d at 610.

Here, the Court finds that there are several factors that distinguish *Green Acres* from the present litigation. Most critically, *Green Acres* and all of the other cases cited by Hanover,[6] were decided at the summary judgment stage and not on a motion to dismiss. *Walter Concrete*, cited by Vanguard, was similarly decided at the summary judgment stage. The courts in those cases, therefore, had the benefit of evaluating a fully developed factual record which is not available to this Court at the current juncture. Moreover, Hanover also concedes that *Green Acres*, an unpublished decision, is "the only Massachusetts decision that addresse[s] this specific issue." (Def.'s Moving Br. 11–12.) Hanover's citations to other Massachusetts decisions are, therefore unavailing because, as Hanover admits, those decisions were "interpreting different bond forms." (*Id.* at 14.)

The Court, accordingly, finds that Vanguard has sufficiently alleged that Hanover breached its obligations under the Bonds. "The defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750. Construing the allegations of the Amended Complaint in Vanguard's favor, the Court finds Hanover has failed to meet its burden, on a motion to dismiss, of establishing that no claim has been presented. Hanover's Motion to Dismiss, to the extent it seeks dismissal of the Bond Claims, is accordingly denied.

### D. Vanguard's Extracontractual Claims Survive Because Hanover Fails to Assert an Independent Reason as to Why They Should Be Dismissed

Hanover argues that Vanguards extracontractual claims—Counts Three, Four, and Five—must be dismissed because "the underlying breach of contract claims (Counts I and II) have no

---

[6] *See Hunt Constr. Grp., Inc. v. Nat'l Wrecking Corp.*, 542 F. Supp. 2d 87, 95–96 (D.D.C. 2008), *aff'd on other grounds*, 587 F.3d 1119 (D.C. Cir. 2009); *Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96 (2d Cir. 2004); *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 108 (5th Cir. 1994); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598, 2008 WL 2937856, at *1 (S.D. Fla. July 14, 2008), *aff'd*, 492 F. App'x 54 (11th Cir. 2012).

merit as Hanover did not have any obligations under the Bonds." (Def.'s Moving Br. 21.) Because the Court finds Vanguard has sufficiently alleged that Hanover breached the terms of the Bonds, and because Hanover has not asserted an independent reason as to why the remaining claims should be dismissed, Hanover's Motion, to the extent it seeks dismissal of Counts Three, Four, and Five, is similarly denied.

### V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is denied. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 31, 2020